**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| CHARLESTON WATERKEEPER, SOUTH CAROLINA COASTAL CONSERVATION LEAGUE,<br><br>Plaintiffs,<br><br>v.<br><br>FRONTIER LOGISTICS, L.P.,<br><br>Defendant. | ) | C.A. No. 2:20-CV-01089-DCN |

**MEMORANDUM IN OPPOSITION TO THE SOUTH CAROLINA STATE PORTS AUTHORITY'S MOTION TO QUASH PLAINTIFFS' SUBPOENA**

**INTRODUCTION**

On August 5, 2020, Plaintiffs Charleston Waterkeeper and South Carolina Coastal Conservation League (collectively, "Plaintiffs") served the South Carolina Ports Authority ("SCPA") with a subpoena pursuant to Fed. R. Civ. P. 45 ("Rule 45") to produce "all documents . . . relating to alleged release(s) of plastic pellets into the environment from any property owned by SCPA, including Union Pier; all documents exchanged with any employee or representative of Frontier Logistics, L.P., SCDHEC, or any other entity relating to plastic pellet pollution in Charleston waters." Ex. 1 at 1. This subpoena followed Defendant Frontier Logistics, L.P.'s ("Frontier"), July 31, 2020 responses to Plaintiffs' first set of Requests for Production, Requests for Admission, and Interrogatories, which show that SCPA has been significantly involved in the events underlying this case. *See generally* Exs. 2-4. Frontier licenses its facility at Union Pier Terminal in Charleston, South Carolina ("Union Pier facility") from SCPA, Ex. 4 at 11, and it was SCPA that first notified Frontier on July 19, 2019, that plastic pellets resembling those

handled at the facility had washed ashore on Sullivan's Island, *id.* at 6. Following the spill, SCPA hired a contractor to perform the initial beach cleanup, and sent some recovered pellets to Frontier's client, Chevron Phillips Chemical, for chemical analysis. *Id.* SCPA also required Frontier to implement certain "protective measures" at the Union Pier facility pursuant to their License Agreement, Ex. 5 at Frontier 001352, and allegedly performs random inspections to this day to ensure compliance, Ex. 4 at 11.

Upon receiving the Rule 45 subpoena on August 5, SCPA "strongly urge[d]" Plaintiffs to instead send a records request under the South Carolina Freedom of Information Act ("FOIA") or else SCPA would assert sovereign immunity and move to quash the subpoena. Ex. 6 at 4. Plaintiffs replied with case law directly refuting SCPA's sovereign immunity claim and advised SCPA that FOIA was not a substitute for compliance with the subpoena. *Id.*[1] On August 14, Frontier informed Plaintiffs that it would not comply with the subpoena but would instead unilaterally convert it into a FOIA request, over Plaintiffs' prior objections. Ex. 7. Plaintiffs again sent a letter to SCPA on August 17 objecting to the conversion of the subpoena to a FOIA request (and again disputing SCPA's sovereign immunity claim) and explained that they planned to move to compel compliance with the subpoena under Rule 45(d)(2)(B)(i) by Friday, August 21, 2020. *See* Ex. 6 at 1. Before Plaintiffs could move to compel, SCPA filed this motion to quash the subpoena, asserting sovereign immunity from federal process and claiming their unilateral conversion of the subpoena to a FOIA request moots the matter. *See* Dkt.#29-3.

[1] Notably, SCPA includes only its August 14 letter to Plaintiffs with its motion, but omits this earlier e-mail correspondence, as well as Plaintiffs' August 17 response to SCPA's letter, explaining that SCPA would be acting in contravention of case law (and citing that law) if it relied on sovereign immunity as a basis to refuse to comply. SCPA never so much as acknowledged this case law in its correspondences with Plaintiffs or in its motion.

## ARGUMENT

SCPA argues that it need not comply with Plaintiffs' subpoena because sovereign immunity and the Eleventh Amendment preclude *any* exercise of federal judicial power over it. Dkt.#29-3 at 3. SCPA fails to cite a single case supporting such an expansive view of sovereign immunity. But more tellingly, SCPA entirely ignores precedent—pointed out by Plaintiffs in the parties' letter exchange on this matter—that sovereign immunity does not bar a Rule 45 subpoena served on a non-party State entity. *See, e.g.*, *Arista Records LLC v. Does 1-14*, No. 7:08cv00205, 2008 WL 5350246 (W.D. Va. Dec. 22, 2008); *Jackson v. AFSCME Local 196*, No. 3:07CV0471 (JCH), 2008 WL 1848900 (D. Conn. Apr. 25, 2008); *Allen v. Woodford*, 544 F. Supp. 2d 1074 (E.D. Cal. 2008); *Laxalt v. McClatchy*, 109 F.R.D. 632, 635 (D. Nev 1986). SCPA also argues that there would be sovereign immunity implications if the Court were to find it in contempt, seemingly forecasting its plans not to comply with any Court order. Finally, SCPA's unilateral conversion of a Rule 45 subpoena to a FOIA request is unreasonable and unsupported by any law—FOIA is not a substitute for federal court discovery of any "relevant" information.

### I. Sovereign Immunity Does not Bar a Subpoena to a Non-Party State Entity.

Pursuant to the Eleventh Amendment, a federal court has no jurisdiction over "any suit in law or equity, commenced or prosecuted against one of the United States," including by a citizen against his own state. U.S. Const. amend. XI. The instant motion therefore turns on whether a Rule 45 subpoena to a State entity like SCPA in an action in which SCPA is not a party constitutes such a "suit in law or equity." *See Allen*, 544 F. Supp. 2d at 1078.

As Plaintiffs pointed out to SCPA in consultation on this subpoena, the overwhelming weight of authorities hold that issuance of a Rule 45 subpoena to a non-party State entity does not implicate sovereign immunity. SCPA wholly ignores these cases, including a Fourth Circuit

district court decision that has already considered this precise issue. *See Arista Records*, 2008 WL 5350246, at *3. *Arista Records* was, at the time, a "case of first impression" in this circuit and relied on persuasive precedent from other circuits rejecting state sovereign immunity claims against subpoenas. *Id.* at *3-5; *see Jackson*, 2008 WL 1848900; *Allen*, 544 F. Supp. 2d 1074; *In re Mo. Dep't of Nat. Res.*, 105 F.3d 434, 436 (8th Cir. 1997) ("There is simply no authority for the position that the Eleventh Amendment shields government entities from discovery in federal court."); *Laxalt v. McClatchy*, 109 F.R.D. 632 (D. Nev. 1986) ("[W]here inspection and copying of State records is all that is being sought . . . . [the magistrate's] holding that the [Eleventh] Amendment does not bar discovery is not contrary to law."); *see also Barnes v. Black*, 544 F.3d 807, 812 (7th Cir. 2008) ("The writ sought in this case would if granted be like an order commanding a state official who is not a party to a case between private person to produce documents in the state's possession during the discovery phase of the case; such orders, because they do not compromise state sovereignty to a significant degree do not violate the Eleventh Amendment."); *Univ. of Tex. at Austin v. Vratil*, 96 F.3d 1338, 1340 (10th Cir. 1996) ("In *Laxalt*, discovery was sought under [Rule] 45, which, in contrast to [Rule] 33, specifically provides a procedure applicable to nonparties.").

The analysis in *Allen* is particularly instructive. 544 F. Supp. 2d at 1077-80. The *Allen* court examined in detail how the Supreme Court, over hundreds of years, has construed the scope of sovereign immunity and the meaning of "any suit in law or equity" under the Eleventh Amendment. *See id.* It ultimately concluded that:

> the Eleventh Amendment does not apply to preclude discovery from a State agency, which can only be obtained through the State's custodians of records or from other employees having custody and control of the information or documents sought. Neither the State, nor any of its employees to whom subpoenas have been directed to obtain the information sought, [] have been found essential to the prosecution of the Plaintiff's case, are parties, nor has any relief in law or equity been sought

> against them or the State. No judgment will be issued in this action against the State that could have any conceivable effect on the State treasury; the State custodians are only subpoenaed to produce documents for use in the prosecution of this federal civil rights action.

*Id.* at 1079. Applying the *Allen* decision here, Plaintiffs' subpoena to SCPA does not constitute a suit—it does not "walk[], talk[], and squawk[] like a lawsuit"—and state sovereign immunity thus does not excuse SCPA from compliance. *See Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 757 (2002) (quoting *S.C. State Ports Auth. v. Fed. Mar. Comm'n*, 243 F.3d 165, 174 (4th Cir. 2001)).[2]

SCPA, however, advances a different and novel test for sovereign immunity. According to SCPA, "[b]ecause this Court would not have jurisdiction over [SCPA] as a party to the case, it cannot have jurisdiction over [SCPA] to issue or enforce the subpoena." Dkt.#29-3 at 4. But no case law—not even the cases cited by SCPA—endorses the notion that a court's subpoena power is constrained by a *hypothetical* suit against a State entity. *See* Dkt.#29-3 at 4-5 (citing *McCook Metals LLC v. Alcoa, Inc.*, 249 F.3d 330 (4th Cir. 2001), and *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72 (1988)). Rather, *McCook Metals*, 249 F.3d at 334, and *Catholic Conference*, 487 U.S. at 76, held simply that a court's subpoena power is dependent upon its subject-matter jurisdiction in the *underlying action*. Because SCPA has not contested the Court's jurisdiction over Plaintiffs' suit against Frontier, its central argument for sovereign immunity fails, and the cases it cites are of no relevance. *See Catholic Conference*, 487 U.S. at 76 ("[A] nonparty witness can challenge the court's lack of subject-matter jurisdiction in defense of a civil contempt citation, notwithstanding the absence of a final judgment in the underlying action.").

---

[2] SCPA's citations to cases construing *federal* sovereign immunity are of no moment. *See* Dkt.#29-3 at 6-7 (citing *EPA v. Gen. Elec. Co.*, 197 F.3d 592 (2d Cir. 1999), and *Smith v. Cromer*, 159 F.3d 875 (4th Cir. 1998)). "[T]he instant case is distinguishable because the claim for sovereign immunity is asserted by a state, rather than a federal, entity." *Arista Records*, 2008 WL 5350246, at *5 (citing *Jackson*, 2008 WL 1848900). As the *Arista Records* court noted, "[f]ederal sovereign immunity does not derive from any text in the Constitution, though it has been stated to be 'embodied in the Constitution.'" *Id.* at *5 n.14 (quoting *Kennecott Copper Corp. v. State Tax Comm'n*, 327 U.S. 573, 580 (1946)). Further, federal sovereign immunity in federal court is based on different principles than state sovereign immunity in the same venue: "In the former, the federal court faces separation of powers issues—how much authority should the judicial branch have to enact a judgment over either the executive or legislative branches. In contrast, state sovereign immunity in federal court raises federalism issues . . . ." Jennifer Lynch, *The Eleventh Amendment and Federal Discovery: A New Threat to Civil Rights Litigation*, 62 Fla. L. Rev. 203, 235-36 (2010).

## II. SCPA Cannot Use the Threat of Non-compliance as a Shield from a Rule 45 Subpoena.

SCPA's analogy to a contempt proceeding for failure to comply with a lawful subpoena is not only premature and wrong, but also a disturbing preview as to how it may treat a Court order to comply with Plaintiffs' subpoena. First, the instant motion concerns whether issuance of and compliance with this subpoena, and this subpoena alone, conflicts with SCPA's sovereign immunity; the Court need not consider whether a hypothetical contempt proceeding may also conflict with sovereign immunity. Plaintiffs have not yet sought contempt against SCPA despite its unsupported refusal to comply with the subpoena. Second, SCPA's argument that a contempt citation for non-compliance with a Rule 45 subpoena is a "suit" barred by the Eleventh Amendment is incorrect. The Supreme Court has found that the Eleventh Amendment does not bar financial penalties considered "ancillary" to an order enforcing federal law:

> If a state agency refuses to adhere to a court order, a financial penalty may be the most effective means of insuring compliance. The principles of federalism that inform Eleventh Amendment doctrine surely do not require federal courts to enforce their decrees only by sending high state officials to jail. The less intrusive power to impose a fine is properly treated as ancillary to the federal court's power to impose injunctive relief."

*Hutto v. Finney*, 437 U.S. 678, 691 (1978). Finally, Plaintiffs would hope that there is no need to reach the question of whether SCPA is in contempt. Rather, Plaintiffs expect that SCPA would refrain from flouting a Court order requiring compliance with the subpoena. SCPA's argument that any contempt ruling would implicate sovereign immunity proves too much about its future plans, and the Court should issue a strong warning to SCPA about the implications of such an approach.[3]

---

[3] At minimum, Plaintiffs intend to seek their attorneys' fees for having to respond to frivolous motions such as this one, and the amount of fees would only be greater if, for example, Plaintiffs have to pursue a contempt order from this Court.

**III. FOIA Is not an Adequate Substitute for Plaintiffs' Lawfully Issued Subpoena.**

SCPA argues that, "[n]otwithstanding the doctrine of sovereign immunity and the Eleventh Amendment," its conversion of Plaintiffs' subpoena to a FOIA request moots the matter. However, a FOIA request and a subpoena subject the responding party to completely different disclosure requirements and provide the requesting party completely different recourse for non-compliance. FOIA is therefore no substitute for a Rule 45 subpoena.

First, FOIA provides a State entity multiple exemptions from disclosure that a subpoena does not, such as for "trade secrets," "information of a personal nature," "matters specifically exempted from disclosure by statute or law," and "documents incidental to proposed contractual arrangements." *Id.* § 30-4-40. Rule 45, by contrast, broadly requires production of all relevant information. The scope of permissible discovery under Rule 45 is set forth in Fed. R. Civ. P. 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

In other words, "[t]he scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules . . . . [I]f material is relevant, not privileged, and is, or is likely to lead to, admissible evidence, it is obtainable by way of subpoena." *Jackson v. Brinker*, 147 F.R.D. 189, 193-94 (S.D. Ind.1993) (internal citations omitted); *see also* Fed. R. Civ. P. 45 advisory committee's note (1991) ("The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34.").

SCPA's idea that FOIA is equivalent to this broad standard for information discoverable under Rule 45—including for information that is just "reasonably calculated to lead to the discovery of admissible evidence"—is wrong. Multiple courts have addressed this argument in the federal FOIA context, finding that FOIA exemptions do not automatically preclude discovery under the Federal Rules of Civil Procedure. *See Kamakana v. City of Honolulu*, 447 F.3d 1172, 1185 (9th Cir. 2006) (noting that documents which are exempt from disclosure under FOIA are not automatically privileged in civil discovery); *see also Kerr v. U.S. Dist. Court for N. Dist. of Cal.*, 511 F.2d 192, 197-98 (9th Cir. 1975) ("[T]he exceptions to the disclosure in [FOIA] were not intended to create evidentiary privileges for civil discovery. They were intended only to permit the withholding of certain types of information from the public generally." (internal citations omitted)). Further, if Plaintiffs were unsatisfied with SCPA's response under FOIA, the only recourse would be to file a *separate* action in state circuit court seeking an injunction for additional disclosure, S.C. Code Ann. § 30-4-100(A), as opposed to applying to this Court for relief. This approach is highly problematic. Under SCPA's theory, Plaintiffs could be deprived of potentially relevant information, and have no timely recourse in state court to obtain that information before discovery ends in this case.[4] While Plaintiffs will accept a FOIA response from SCPA within the timeframe specified in its motion, Dkt.#29-3 at 7 n.5, any such production is no substitute for compliance with Plaintiffs' Rule 45 subpoena. The Court should deny SCPA's unilateral conversion of Plaintiffs' Rule 45 subpoena to a FOIA request.

---

[4] The South Carolina FOIA also permit public bodies at least 40 days to produce records which, as here, are less than 24 months old, S.C. Code Ann. § 30-4-30(C), whereas a Rule 45 subpoena requires compliance (or written objections) within, at most, 14 days after service, Fed. R. Civ. P. 45(d)(2)(B).

**CONCLUSION**

For all of the reasons stated herein, SCPA's motion to quash should be denied. SCPA should be required to comply with Plaintiffs' Rule 45 subpoena within 14 days of the Court's ruling on this matter.

Dated: August 24, 2020

Respectfully submitted,

*s/ Catherine M. Wannamaker*
Bar No. 12577
cwannamaker@selcsc.org
Southern Environmental Law Center
525 East Bay Street, Suite 200
Charleston, SC 29403
Telephone: (843) 720-5270
Facsimile: (843) 414-7039

*Attorney for Plaintiffs Charleston Waterkeeper and South Carolina Coastal Conservation League*