# Exhibit 4

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| CHARLESTON WATERKEEPER, SOUTH CAROLINA COASTAL CONSERVATION LEAGUE,<br><br>Plaintiffs,<br><br>v.<br><br>FRONTIER LOGISTICS, L.P.,<br><br>Defendant. | ) | C/A No. 2:20-cv-01089-DCN |

**DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Defendant Frontier Logistics, L.P. ("Frontier") provides the following responses to Plaintiffs' First Set of Interrogatories.

**GENERAL OBJECTIONS**

Frontier objects to providing any information or response that is protected by the attorney-client privilege or work product exemption, trade secret, or other confidential and proprietary information, and all other privileges and immunities from discovery. No response is intended as or should be construed as a waiver of such objections, privileges, and immunities. Frontier Logistics asserts such exemptions, privileges and immunities and therefore objects to producing any information or documents protected thereby.

Frontier further asserts work product exemption and immunities as to all communications and documentation prepared in anticipation of litigation and thus objects to producing such work product. In setting forth these answers, Frontier Logistics does not waive any work product or other privilege or immunity which may attach to information called for in, or which may be responsive to, these interrogatories.

Frontier does not concede the relevance or materiality of these interrogatories, the subject matter of these interrogatories, or documents produced in response to these interrogatories. Frontier Logistics reserves the right to question the competency, relevancy, materiality, privilege, and admissibility of any documents produced or referred to herein. Frontier also reserves the right to revise, correct, supplement, or clarify any of its answers or documents referred to herein. Frontier further objects to any request that is outside the scope of the knowledge of Frontier. Finally, Frontier objects to each interrogatory that is overly broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these General Objections, which are incorporated into all responses as if stated verbatim therein, Frontier responds as follows:

## RESPONSES TO INTERROGATORIES

**1. Please identify each person who has assisted in the preparation of the responses to these interrogatories and requests for admission and in the review and collection of documents in response to these document requests.**

**RESPONSE:**

In addition to the general objections, Frontier further objects to this interrogatory on the grounds that it seeks information irrelevant and collateral to the claims and defenses in this matter. Frontier further objects to this request insofar as it purports to seek the disclosure of information protected by the attorney-client privilege and/or the work-product exemption. Subject to and without waiving the above objections, Frontier identifies the following individuals responsive to this request:

a. Attorneys and staff at the law firm of Willoughby & Hoefer, P.A.
b. Paul Heard (V.P., Business, General Counsel, Frontier)

As with all responses, Frontier reserves the right to update, supplement, revise, amend, correct and/or clarify this response as any additional information comes to its attention through discovery or otherwise.

**2. Please describe any steps taken to search for documents responsive to Plaintiffs' Requests for Production of Documents, below, including the names of custodians' whose files were searched and what search terms were used, if any.**

**RESPONSE:**

Plaintiffs' Requests for Production were provided to and subsequently reviewed in detail by the individuals listed in Response to Interrogatory 1, above. In the course of this review, the undersigned explained the requirements of the discovery process and rules of production, while working with Frontier to identify, preserve, search, retrieve, and produce documents and information responsive to Plaintiffs' requests. Documents compiled by Frontier were reviewed by the undersigned for relevancy to Plaintiffs' request, as well as to determine if a privilege or exemption was applicable. The custodians identified by Frontier as having documents potentially responsive to Plaintiffs' requests include:

i. George Cook, Paul Heard, Shelly Salmon, Kevin Newkirk, Burt Lusk, Brett Huddleston, Andrew Hinton, John Florie.

In conducting an electronic search of the records of the above-listed custodians, the following search terms were applied:

a. "spill"
b. "pellet"
c. "nurdle"
d. "Union Pier"
e. "UP"
f. "UPT"
g. "Charleston"

A company-wide electronic search using the following search terms was also conducted:

a. "spill"
b. "pellet"
c. "nurdle"
d. "Union Pier"
e. "UP"
f. "UPT"

A search for responsive emails, regardless of search terms, for the time period between July 19, 2019 and December 31, 2019, between George Cook, Shelly Salmon, and Kevin Newkirk was also conducted.

As with all responses, Frontier reserves the right to update, supplement, revise, amend, correct and/or clarify this response as additional information comes to its attention through discovery or otherwise.

**3. Please identify each person you believe to have knowledge of the facts and circumstances alleged in the Complaint and Answer in this Action, and for each person identified, please describe the subject matter, nature, and extent of that person's knowledge.**

**RESPONSE:**

a. ***Current or former employees, agents, or officers of Frontier Logistics, L.P.*** – Possess information regarding Frontier's operations at its UPT facility, the materials handled therein, its Best Management Practices, general housekeeping procedures, and its communications with DHEC, the Town of Sullivan's Island, the City of Isle of Palms, or other related entities regarding its operations and inspections at the UPT facility, both prior to and after the closed DHEC enforcement action. These individuals include, but may not be limited to:

   i. George Cook, CEO
   ii. Paul Heard, V.P., Operations, General Counsel
   iii. Kevin Newkirk, V.P., Sales & Marketing
   iv. Shelly Salmon, Manager of Operations
   v. Burt Lusk, Director of Operations
   vi. Brett Huddleston, Terminal Manager
   vii. Andrew Hinton, Shipping Supervisor
   viii. John Florie, Terminal Manager (former)

b. ***Current or former officials and staff of the South Carolina Department of Health and Environmental Control (DHEC)*** – Possess information regarding DHEC's communications with Frontier, its methodology, and its evidence as it relates to the closed enforcement action against Frontier stemming from the alleged July 2019 resin pellet spill, including the reason no formal fines or findings of violations were issued against Frontier; DHEC's determination that Frontier was not in violation of any NPDES requirements; pre- and post-enforcement action inspections of the UPT facility and Frontier's use of Best Management Practices, containment measures, and general housekeeping procedures to prevent resin pellet releases. These individuals include, but may not be limited to:

   i. Wendy Boswell, Charleston & Bureau Area Director, Bureau of Environmental Health Services
   ii. Ashley Auerbach, Office Manager – Charleston, Bureau of Environmental Health Services
   iii. Adam Cannon – Water Pollution Enforcement Section Manager, Bureau of Water

c. ***Current or former employees, agents, or officers of the Town of Sullivan's Island, City of Isle of Palms, and HEPACO, LLC*** – Possess information

regarding the July 2019 pellet pollution on Sullivan's Island and Isle of Palms beaches, the associated response and cleanup activities, and Frontier's assistance with the cleanup activities.

d. ***Current or former employees, agents, or officers of the South Carolina Ports Authority*** – Possess information regarding the July 2019 pellet pollution on Sullivan's Island and Isle of Palms beaches, the associated response and cleanup activities, Frontier's assistance with the cleanup activities, and continued inspections of Frontier's UPT facility to review pellet containment or housekeeping measures.

e. ***Consultants, experts, laboratories, or other third parties hired by Frontier –*** May possess information regarding any chemical analysis of pellets, or other consultants whose testimony may support Frontier's defenses to Plaintiffs' allegations; testimony related to containment or Best Management Practices for the handling of resin pellets; testimony related to any impacts from pellets in the environmental; and testimony as it relates to opinions or testimony proffered by Plaintiffs' witnesses, experts, or consultants. Frontier has yet to identify experts or consultant as outlined above whose testimony may support Frontier's defenses to Plaintiffs' allegations, but will supplement any identified experts or consultants when such information becomes available pursuant to the Court's Scheduling Order.

Frontier also reserves the right to call any witness identified in these disclosures or through supplements as an expert in their chosen field.

f. ***Individuals, entities, or experts identified by Plaintiffs –*** Testimony from individuals, entities, or experts identified by Plaintiffs to the extent those individuals or entities have information relevant to Plaintiff's allegations or Frontier's defenses to Plaintiffs' allegations, including but not limited to individuals who purport to, or that Plaintiffs contend, have participated in the monitoring, collection, and retention of plastic pellets which Plaintiffs contend support the allegations in the Complaint.

As with all responses, Frontier reserves the right to update, supplement, revise, amend, correct and/or clarify this response as additional information comes to its attention through discovery or otherwise. Further responding, Frontier craves reference to the documents produced in response to Plaintiffs' Requests to Production as to the identity of any further individuals or entities who may have knowledge of the circumstances and allegations set forth in Plaintiffs' Complaint.

**4. Please identify and describe each and every communication of Defendant with any third party relating to the July 2019 spill or any other suspected or confirmed release of plastic pellets in Charleston County, whether or not the release was connected in any way to Frontier or the UPT facility.**

**RESPONSE:**

In addition to the general objections, Frontier further objects to this interrogatory on the basis that it is overly broad in time and scope and unduly burdensome. Frontier further objects to the extent this interrogatory seeks information which Plaintiffs may already have in their possession.

Subject to and without waiving the above objections, Frontier responds that it first received a telephone call late in the afternoon on Friday, July 19, 2019, from SCPA relaying that it had been contacted about plastic pellets found on Sullivan's Island beach that appeared to be similar to pellets handled by Frontier at the UPT facility. Shortly after the call from SCPA, Frontier received a call from a representative of DHEC. The representative said, in effect, DHEC believed Frontier had a spill of plastic pellets at its UPT facility and that it should immediately begin cleanup of the Sullivan's Island beach. Frontier replied that it was unaware of any spill at its UPT facility. Frontier further replied that it had no reason at that time to believe it was responsible, but volunteered, nonetheless, to send representatives to the beach as soon as possible (which was the next day) to inspect and assist with the cleanup. Frontier also communicated with its customers about the alleged spill. Frontier employees arrived on the following day. Frontier was joined by HEPACO, a contractor hired by SCPA, who assisted in the cleanup effort, which continued for a week. Frontier's UPT facility was also inspected by DHEC on July 29, 2019. Frontier employees engaged SCPA, DHEC, and HEPACO in communications throughout the course of those cleanup efforts and inspections.

During the beach cleanup efforts, Frontier employees closely examined the plastic pellets on Sullivan's Island Beach, a portion of which were observed as not physically resembling the type handled by Frontier at its UPT facility. On August 1, 2019, Frontier engaged in communications with representatives of DHEC at an enforcement conference at DHEC's headquarters in Columbia, South Carolina. During the enforcement conference, Frontier asserted its position that certain pellets located on the beach were not the type handled by Frontier. Frontier also provided information demonstrating that, notwithstanding, it took immediate action to improve its pellet handling and cleaning procedures to prevent potential migration of pellets offsite at the UPT facility. Frontier also described its significant efforts to remove pellets that had washed ashore of Sullivan's Island Beach and Isle of Palms beach.

Following the enforcement conference, upon information and belief, SCPA personnel forwarded samples of pellets collected on Sullivan's Island and/or at Isle of Palms to Frontier's customer, CP Chem, for analysis. In August 2019, CP Chem communicated that they had completed inspections of the pellets and determined that some of the pellets were not polyethylene (the type handled by Frontier) or manufactured by CP Chem.

By letter to DHEC dated August 29, 2019, Frontier further outlined its response to the pending enforcement action. By letter dated October 17, 2019 DHEC informed Frontier that it closed the pending enforcement action against Frontier without any finding of violation. DHEC further thanked Frontier for its efforts in addressing potential releases of pellets, and for its continued attention to facility operations and best management practices. Despite the closed enforcement action, Frontier allowed DHEC to continue random inspections at the UPT facility to ensure compliance with best management practices. DHEC continued monthly inspections at the UPT facility until the outbreak of COVID-19 in March 2020. Representatives of Frontier engaged in communications with DHEC inspectors during those inspections.

On July 2, 2020, DHEC representatives conducted a random inspection at Frontier's UPT facility in response to reports of alleged pellets located on Sullivan's Island beach. Representatives of Frontier engaged in communications with DHEC inspectors during that inspection. Pursuant to a written incident report completed DHEC after that inspection, DHEC determined Frontier maintained best management practices and did not find evidence of any pellet spill. It was later determined that the pellets located on Sullivan's Island beach at that time were either not pellets at all, or not the type handled by Frontier.

All written communications responsive to Plaintiffs' Requests for Production are being produced simultaneously herewith. As with all responses, Frontier reserves the right to update, supplement, revise, amend, correct and/or clarify this response as any additional information comes to its attention through discovery or otherwise.

**5. Please describe each and every occasion where Defendant knew, suspected, or received notice that plastic pellets had or may have egressed from the UPT facility into the Cooper River and/or onto surrounding property. Please provide the date or period of time during which each occasion occurred, the known or estimated quantity of plastic pellets involved in each occasion, the known or suspected causes of each occasion, any responsive actions taken by Frontier on each occasion, and any persons with knowledge of each occasion.**

**RESPONSE:**

See Response to Interrogatory 4, above. As set forth, Frontier received notice in July 2019, that pellets had been located on certain Charleston-area beaches. After DHEC completed an inspection of Frontier's UPT facility on July 19, 2019, loose pellets were observed at the facility in multiple locations, including but not limited to the rail lines adjacent to the facility and the truck loading dock. All of the loose pellets observed were collected and disposed of at that time.

On July 29, 2019, DHEC conducted a follow-up inspection at Frontier's UPT facility. Limited quantities of loose pellets were also observed during that inspection. The quantities of pellets located during DHEC's inspections are illustrated in pictures taken by DHEC representatives and attached as exhibits to Plaintiffs' Complaint. Upon information and belief, the loose pellets located during those inspections may have been the result of: (1) pellets escaping from the rail cars during the unloading process; (2) pellets escaping during the bagging process; (3) pellets escaping from bags or containers during the truck loading process; or, (4) pellets escaping from uncovered super-sacs during bagging or removal.

Frontier did not observe any loose pellets in the Cooper River adjacent to its UPT facility and/or on the surrounding property at that time. Frontier immediately engaged in extensive responsive efforts to prevent the possibility of pellets migrating offsite. Those responsive efforts are detailed in Frontier's Response to Interrogatory 8, below.

**6. Please explain why Frontier has not obtained or attempted to obtain a NPDES permit for its operations at the UPT facility. To the extent Frontier believes that it is lawfully operating under a NPDES permit obtained by another person, please explain the factual and legal basis for that belief, and please identify the NPDES permit (including the permittee) which allegedly covers Frontier's operations at the UPT facility.**

**RESPONSE:**

Frontier objects to the instant Interrogatory on the grounds that information regarding Frontier's legal analysis and determination as to the need for legal permits associated with its operations at the UPT facility are protected from disclosure by the attorney-client privilege and/or work-product exemption.

Subject to and without waiving those objections, upon information and belief, during its investigation related to the closed enforcement action against Frontier, DHEC determined that Frontier was not in violation of any NPDES requirements.

**7. Please individually identify and describe each and every pathway—including, but not limited to, any drainage outlets, exposed seams, wharf edges, and other gaps, openings, or conduits—by which stormwater could convey from the UPT facility into the Cooper River or onto neighboring property. Please include in your response any and all pathways which have been covered or otherwise manipulated since May 2017 to block the conveyance of stormwater.**

**RESPONSE:**

In addition to the general objections, Frontier further objects to this interrogatory on the basis that it is overly broad in time and scope and unduly burdensome. Frontier further objects to the extent this interrogatory seeks information which Plaintiffs may already have in their possession.

Subject to but without waiving those objections, grates and drains are located on the wharf outside the enclosed facility. The wharf edge is located on the eastern edge of the facility and borders the Cooper River. The storm drains on the wharf and the wharf edge were blocked, covered, and/or screened in July and August, 2019.

The rail unloading and truck loading areas are covered or partially-covered. There are several expansion joints and rock areas in the rail unloading area. There is a cement apron on top of rocks under the truck loading area and adjacent to the rail unloading area. All of the expansion

joints and cement apron/rock exposures were blocked, covered, and/or screened in July and August, 2019.

The bagging and packaging area at the facility is enclosed. Several expansion joints located in the bagging and packaging area were blocked, covered, and/or screened in July and August, 2019.

Further responding, Frontier conducts daily and weekly inspections of the UPT facility, including the condition of all blocked, covered, and/or sealed areas as outlined in this Response. Inspections reports and pictures associated with those inspections are being produced herewith in response to Plaintiff's Requests for Production. Additionally, certain areas described in this Response may not be affected by stormwater.

**8. Please describe all actions or measures considered by Frontier, including its employees, agents, or contractors, at the UPT facility (1) to prevent plastic pellets from spilling during handling, (2) to contain pellets once spilled, (3) to clean up spilled pellets, and (4) to prevent spilled pellets from egressing the facility into the Cooper River or onto neighboring property. For each action or measure considered by Frontier, please state whether it was actually implemented and the date or period of time during which implementation occurred. For each action or measure considered by Frontier but not implemented (including non-implemented portions of actions or measures partially implemented), state the reason why the action or measure was not implemented.**

**RESPONSE:**

Frontier's procedures related to pellet handling and cleanup are produced in response to Plaintiff's Requests for Production. Following DHEC's inspection of the UPT facility on July 19, 2019, Frontier immediately audited its entire facility and initiated an aggressive housekeeping effort whereby any loose pellets were collected and disposed of properly. Frontier also obtained new vacuum cleaning equipment and began the installation of additional building and area barriers to prevent the possibility of any pellet migration offsite. Those protective installations included but were not limited to: foam sealing material at joints or grates, trapping containers, industrial taping of joints, solid barriers, impermeable flexible netting and silt fencing reinforced by sand bags, and similar measures. Frontier also created and immediately implemented a written inspection check list verified by a supervisor from a different Frontier location and supported by photographs. Those inspections continue to date, and associated written inspection reports are being produced herewith in response to Plaintiffs' Requests for Production. Upon information and belief, all areas at the facility by which loose pellets could migrate offsite have been sealed and/or covered since August 2019.

A list of current containment and/or cleanup procedures at the UPT facility is outlined as follows:

1) Fine grade flexible netting and/or an environmental silt fence has been installed below the cement apron and above the rocks surrounding the facility and adjacent to the unloading/loading areas, among other locations. The fencing is secured by hard

fasteners and/or sandbags to ensure containment of any loose pellets. In some locations, the netting is backed by or wrapped around plywood sheets for stiffness and durability.

2) Plastic catch basins are utilized at the rail unloading area along with close containers for emptying the catch basins.
3) Steel I-beam catch basins are installed at the truck loading area and emptied regularly.
4) The loading and unloading areas, including the fencing areas and sandbags, are inspected no less than daily. If any loose pellets are located, they are vacuumed and/or collected. The fencing is fine enough to trap any loose pellets.
5) All storm drain screens are inspected and cleaned regularly. Storm Drains outside the facility are covered with fine grade netting and secured by sandbags.
6) Gaps in the dock curbs on the wharf are blocked by removable custom-built wooden inserts to prevent pellet egress into the waterway.
7) As the number of employees is not very high, employees have been individually counseled on spill prevention procedures and supervised daily.
8) All concrete expansion joints, wharf edges, grates, or other areas at the facility by which loose pellets could migrate offsite are sealed, covered, and or blocked by various means including flexible tape continually inspected and replenished.
9) In order to eliminate the possibility of any loose pellets in damaged bags or bags formerly holding purge materials, Frontier purchased and uses a compactor-baler to collect, compress and to bale (tie) bags together to be recycled.
10) Frontier obtained and now daily operates a "Billy Goat" sweeper vacuum for use at the UPT facility. The sweeper vacuum includes internal fabricated vacuum attachments. The sweeper vacuum is operated daily, in combination with manual sweeping mechanisms (brooms) to collect any loose pellets inside the facility. Frontier also has a designated employee whose sole daily duty is to inspect for pellets, operate the Billy Goat, and repair any damage to sealant tape, netting etc.
11) Gaylord boxes containing loose pellet floor sweep and Purge material are marked with "FS" or "Floor Sweep", easily located at the interior of the facility. The boxes are kept covered continually except when material is added to the box. When the boxes are full, the purge is disposed as the customer, who is the owner of the material, directs. Almost all purge materials are delivered to a reputable recycler. With respect to floor sweep pellets, full, closed boxes of floor sweep are disposed only by sale and transfer of the closed boxes to a reputable recycler.
12) The container formerly utilized for torn or cut bags is now kept closed except for times of actual usage.
13) The parking lot, track and port property outside the licensed area but bounded by fencing is inspected and any loose pellets are recovered.
14) An extensive weekly audit/inspection report system is in place. The entire facility, including the parking area is inspected to ensure that all areas are free of any migrated pellets. The terminal manager, or similar agent, completes the weekly inspection report. The inspection report is then reviewed and confirmed by a Frontier manager from a separate facility, and pictures are taken to validate the inspection report findings. The completed inspection report and supporting pictures and then forwarded to Frontier's corporate office for review and retention. The inspection reports are produced herewith in response to Plaintiffs' Request for Production.

15) The facility is also inspected at random by agents of DHEC including as recently as July 2, 2020. Upon information and belief, DHEC is in possession of inspection reports associated with those inspections, which reveal Frontier's compliance with Best Management Practices. The facility is also inspected randomly by representatives of SCPA.

**9. Please describe all methods or processes that could be used to identify, with any degree of certainty, the manufacturer, product name, or subsequent handlers of plastic pellets recovered from the environment, including visual inspection and chemical analysis.**

**RESPONSE:**

Frontier objects to instant Interrogatory on the ground that it seeks information which will be the subject of expert testimony and/or analysis.

Subject to those objections, *see* the Safety Data Sheets (SDS sheets) being produced herewith in response to Plaintiffs' Requests for Production. The SDS sheets include the manufacturer, product name, and main chemical component (polyethylene) of the pellets handled by Frontier at its UPT facility. All of the pellets handled by Frontier at its UPT facility are unmarked, uniformly shaped, white, and opaque. Frontier does not have information regarding the identification of pellets it handles at its UPT facility, including information regarding the chemical makeup of those pellets, beyond what may be included in the SDS sheets or this Response.

**10. Please describe Frontier's new facility which is currently under construction at the former Navy base in North Charleston, South Carolina, including the estimated operational date, any plastic pellet containment measures and housekeeping procedures incorporated into the design, and plans for the UPT facility once the new facility is operational.**

**RESPONSE:**

In addition to the general objections, Frontier further objects to this interrogatory on the grounds that it seeks information irrelevant and collateral to the claims and defenses in this matter. Frontier further objects to this interrogatory on the basis that it is overly broad in time and scope.

Subject to and without waiving those objections, Frontier responds that construction on an approximately 556,110 sq. ft. facility in North Charleston is currently in progress. The new facility is scheduled to be operational in October, 2020. All operations at the UPT facility will be transferred to the new facility, and the UPT facility will cease operations, on or before December 31, 2020 (the date the current license agreement at the UPT facility expires). Containment and housekeeping procedures currently in place at Frontier's UPT facility will be implemented at the new facility, as appropriate based on specific and improved site characteristics. Daily and weekly inspections, as outlined in Response to Interrogatory 8, will be implemented at the new facility.

11. **Please identify all evidence and describe the factual basis for your contention that lack of standing; failure to state a claim; compliance with statutes; compliance with Best**

**Management Practices; failure to satisfy elements of RCRA and CWA; act of God or third party; failure to satisfy RCRA definition of "solid waste"; mootness; no continuous violations; declaratory relief; injunctive relief; authorization in law; identical relief; and incompatible claims provide defenses to Plaintiff's claims in this Action**.

**RESPONSE:**

In addition to the general objections, Frontier objects to this interrogatory on the grounds that it constitutes a premature contention interrogatory in that it seeks the legal reasoning and theories behind the defenses asserted by Frontier in this litigation, some of which may be the subject of expert testimony and call for legal conclusions going to ultimate issues in this case. Frontier further objects to the extent that these requests seek a replication of arguments previously made and explained in Frontier's filings to the Court, including, *inter alia*, Frontier's Answer to Plaintiffs' Complaint (dkt. #12, 12-1), Motion for Judgment on the Pleadings (dkt. #23), and Memorandum in Support of Motion for Judgment on the Pleadings (dkt. #23-1). Frontier reserves the right to update, supplement, revise, amend, correct and/or clarify its defenses as set forth in previous filings as necessary and/or if additional information comes to its attention through discovery or otherwise.

Respectfully submitted,

s/J. Joseph Owens___________
Randolph R. Lowell, Fed. Bar No. 9203
Chad N. Johnston, Fed. Bar No. 10813
J. Joseph Owens, Fed. Bar No. 12575
**WILLOUGHBY & HOEFER, PA**
133 River Landing Drive, Suite 200
Charleston, South Carolina 29492
rlowell@willoughbyhoefer.com
cjohnston@willoughbyhoefer.com
jowens@willoughbyhoefer.com
(843) 619-4426

*Attorneys for Frontier Logistics, L.P.*

July 31, 2020
Charleston, South Carolina