# EXHIBIT A

## COMPROMISE AND SETTLEMENT AGREEMENT, RELEASE OF CLAIMS, AND COVENANT NOT TO SUE

This Compromise and Settlement Agreement, Release of Claims, and Covenant Not to Sue (the "Agreement") is made and entered into on the 3rd day of March, 2021, by and between the Charleston Waterkeeper and South Carolina Coastal Conservation League (together, "Plaintiffs"), and Frontier Logistics, L.P. ("Frontier") (collectively with Plaintiffs sometimes hereinafter referred to as the "Parties", or each entity separately as a "Party") with respect to that certain action styled "Charleston Waterkeeper and South Carolina Coastal Conservation League v. Frontier Logistics, L.P." pending in the United States District Court for the District of South Carolina, Charleston Division, Case No. 2:20-cv-01089-DCN (the "Action").

WHEREAS, Plaintiffs brought a citizen suit, and the Parties have been litigating, the Action pursuant to claims alleging violations of the Solid Waste Disposal Act, 42 U.S.C. §§ 6901 *et seq.* ("Resources Conservation and Recovery Act" or "RCRA") and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"), alleging illegal discharges of plastic pellets from Frontier's former facility located at Union Pier Terminal ("UPT") in Charleston County, South Carolina; and

WHEREAS, the Parties have engaged in substantive settlement negotiations and exchanged information on the factual and legal positions of each Party; and

WHEREAS, after taking into account the burdens, risks, uncertainties, and expense of litigation, as well as the fair, cost-effective, and assured method of resolving the Action under this Agreement, the Parties have concluded that this Agreement is fair, reasonable, adequate and in their best interests.

NOW, THEREFORE, in consideration of the above-stated premises, the promises and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    Consideration.    In settlement and satisfaction of the Action and all claims alleged, or which could have been alleged, by Plaintiffs concerning the subject matter thereof, or relating in any way to the Action, the Parties agree as follows.

1.1 <u>Third-Party Audit</u>. Frontier will implement all commercially reasonable[1] measures that are recommended by a third-party consultant,[2] at Frontier's cost and expenses, to prevent the release and migration off-site of plastic pellets, flakes, and powders (as applicable) at Frontier's North Charleston[3] facility ("facility"), pursuant to the following procedures:

    1.1.1 The third-party consultant shall review and make recommendations for all aspects of the facility and the operations therein that may be relevant to the release and migration off-site of plastic pellets, flakes, and powders (as applicable), specifically to include source controls, containment controls, stormwater management systems, standard operating procedures, spill prevention and response procedures, and internal audit systems (hereinafter, "pellet controls").

    1.1.2 After entry of an order dismissing the pending Action with prejudice in the United States District Court as provided for in Section 1.5 below, Frontier agrees to allow the selected third-party consultant to conduct the pellet control audit at the facility. The selected third-party consultant shall have an opportunity to review all information he or she requests from Frontier that is relevant to making a thorough evaluation of the pellet controls at the facility.

    1.1.3 The third-party consultant shall conduct at least one site visit at the facility to evaluate the pellet controls. At Plaintiffs' cost and expense, Plaintiffs' counsel and their expert, Dr. Aiza Jose-Sanchez, may accompany the selected third-party consultant on the initial site visit and may share information and

---

[1] In this Settlement Agreement "commercially reasonable" shall mean, "fair, done in good faith, and corresponding to commonly accepted commercial practices."

[2] At this time, the parties have agreed to use Terracon Consultants, Inc. ("Terracon") as the third-party consultant, subject to Terracon's warranty that it possesses appropriate expertise, or will acquire appropriate expertise or bring in an additional expert, if necessary, to perform the Audit.

[3] The "North Charleston facility" or "facility" shall mean the packaging and distribution warehouse owned by Frontier affiliate, FLSC Properties, LLC, at the former Navy base in North Charleston, South Carolina (primarily located at 1681 McMillan Ave., N. Charleston, SC 29405) and all associated real estate, buildings, equipment, and infrastructure, to include any portion of the facility leased, licensed, operated, or otherwise controlled by a third party.

recommendations with the third-party consultant as they deem appropriate, so long as a copy of such information and recommendations are also furnished to Frontier.

1.1.4 Within forty-five (45) days of the initial site visit, the selected third-party consultant shall submit recommendations for pellet controls at the facility to Plaintiffs' counsel and Frontier.

1.1.5 Within forty-five (45) days of receipt of the third-party consultant's recommendations, Dr. Jose-Sanchez shall have the opportunity to review the recommendations and provide written comments to the consultant and Frontier, at Plaintiffs' cost and expense.

1.1.6 Frontier must implement all commercially reasonable pellet controls that are recommended by the consultant. Within sixty (60) days of receiving the third-party consultant's final recommendations, Frontier shall provide Plaintiffs a written report with all the recommendations that it intends to implement and a timeline for implementation, as well as an explanation for measures it does not intend to implement.

1.1.7 Frontier will allow the consultant to review and test the efficacy of the implemented measures for a period of up to three days during any single seven-day period per year (i.e., one three-day review and test per year), upon reasonable notice to Frontier of not less than seven days. Frontier agrees to implement any additional and commercially reasonable recommended changes regarding the implementation measures that arise as a result of such annual review and test by the third-party consultant. These annual reviews will continue for two (2) years after the original audit (the "Audit Period").

1.1.8 Frontier agrees to consent to an order of dismissal that retains jurisdiction for the enforcement of the terms and conditions of the Third-Party Audit procedure during the Audit Period, as below outlined in Section 1.5.

1.1.9 The Parties agree to first attempt to informally resolve, in good faith, any disputes or controversies related in any way to the construction or enforcement of this Agreement, including but not limited to the Third-Party Audit procedure requirements, before filing or pursuing judicial action before the Court.

    1.2    <u>Supplemental Environmental Mitigation Funds</u>.  Frontier agrees to contribute a sum of One Million and No/100 Dollars ($1,000,000.00), paid in equal installments over four (4) years (i.e., $250,000.00/year), to be used for beneficial environmental projects of Plaintiffs' choosing. The first payment shall be due thirty (30) days after the entry of the order of dismissal with prejudice, and subsequent three payments shall be due on the anniversary date of such payment.

    1.3    The Parties further agree to work collaboratively on a public statement regarding the resolution of this litigation and the funding of such beneficial environmental projects, to include language indicating that the Parties agree that the payment and use of funds in this manner both achieves the goals of the litigation and substantially benefits the Charleston Harbor environment, as outlined in Section 5, below.

    1.4    <u>Attorneys' Fees/Costs</u>.  Frontier will agree to pay a total of Two Hundred Twenty-five Thousand and No/100 Dollars ($225,000.00) to contribute to Plaintiffs' attorneys' fees and costs, including expert costs, which shall be due ninety (90) days after the entry of the order of dismissal with prejudice.

    1.5    <u>Consent Order of Dismissal with Prejudice</u>.  Immediately following the execution of this Agreement, counsel for Frontier shall file a Consent Order of Dismissal with Prejudice signed by counsel for Frontier and counsel for Plaintiffs with the Clerk of Court. The form of the Joint Motion for Entry of a Consent Order of Dismissal with Prejudice to be signed by Plaintiffs' counsel and Frontier's counsel for filing, as well as a Proposed Consent Order for submittal to the Court is attached as **Exhibit A**. The Proposed Consent Order of Dismissal with Prejudice specifically retains jurisdiction to enforce the Third-Party Audit procedure during the Audit Period, as well as the provisions of the Confidentiality Order entered in the Action (dkt.#18).

2.    <u>Release</u>.

    2.1    For and in consideration of the agreements, terms, conditions, and warranties made in this Agreement, Plaintiffs hereby forever and completely release, acquit, and discharge Frontier and its officers, directors, employees, agents, consultants, representatives, affiliates, successors and assigns from any and all claims, counterclaims, defenses, causes of action, liabilities, damages, costs and expenses, including but not limited to any common law claim, whether intentional or negligent, or any violation of any federal, state, municipal, or other governmental constitution, statute, regulation, or ordinance, of any nature whatsoever, including, but not limited to exemplary or punitive damages or any penalties, liquidated damages, equitable relief, injunctive relief, declaratory relief, pre- or post-judgment

4

interest, whether these claims are known or unknown, direct or contingent, indirect or derivative, suspected or unsuspected, arising out of or in any way asserted in or which might have been asserted in or which relate to, directly or indirectly, the Action. This release applies to any claims which Plaintiffs now have or claim to have, or which Plaintiffs at any time before this had or claimed to have, or which Plaintiffs at any time hereafter may have or claim to have against Frontier based upon any act or omission or event of Frontier which relate to, directly or indirectly, the Action ("Released Claims"). This release shall not apply to any claims against Frontier for any event, transaction, or occurrence unrelated to the Released Claims arising from a facility that was not the subject of the Action.

      2.2    It is the intent of the Parties to give the broadest release and discharge possible under the law and the provisions hereof should be interpreted so as to give effect to such intent. It is the intent of Plaintiffs that Frontier shall never be liable to any other person or party asserting any claim for any additional sums of money, including attorneys' fees and other costs and expenses of litigation, with respect to the claims released herein or relating in any way to the Action.

3.    <u>Covenant Not to Sue and Limitation on Relief</u>.

      3.1    Plaintiffs further covenant that they will not initiate, participate in, file or assert any action, proceeding, lawsuit, claim, or cause of action (whether common law, statutory, regulatory, federal, state, legal, or equitable) against Frontier for any event, transaction, or occurrence related to or arising from the subject matter of the Action. This covenant not to sue is intended to have the broadest interpretation possible and shall absolutely prohibit Plaintiffs from any further action against Frontier related to or arising from the subject matter of the Action. This covenant shall not apply to any claims against Frontier for any event, transaction, or occurrence unrelated to the Released Claims arising from a facility that was not the subject of the Action.

      3.2    Plaintiffs further covenant that they will not assist, encourage, support, aid a third party, or participate in, make any allegations, or assert any action, proceeding, lawsuit, claim, or cause of action (whether common law, statutory, regulatory, federal, state, legal, or equitable) against Frontier which is related to or arises from the subject matter of the Action. This covenant shall not apply to any claims against Frontier for any event, transaction, or occurrence unrelated to the Released Claims arising from a facility that was not the subject of the Action.

4.    <u>Compromise and Intention of Parties</u>. It is expressly understood and agreed that the terms hereof are contractual in nature and not merely recitals and that the agreements, terms, conditions, covenants, and releases contained herein are made and given in order to compromise and settle disputed claims. The Parties further agree, among them, that this is a compromise, resolution, and settlement of any and

5

all claims, allegations, or related activities of the Action primarily to avoid the uncertainty, time, trouble and expense of litigation, and that such compromise, resolution and settlement shall not be taken as an admission of liability by Frontier, which steadfastly denies any wrongdoing or liability as to the disputed claims. No promise or inducement has been offered except as set forth herein. All payments and measures agreed to by Frontier are being undertaken voluntarily to resolve the Released Claims and do not indicate or suggest that Plaintiffs have prevailed on any of the Released Claims. This Agreement is executed without reliance upon any oral, written, express or implied representations, statements, promises, warranties, or other inducement of any nature or sort made by any person or party hereto other than as is expressly set forth herein.

5.  Public Statements.

    5.1  Each of the Parties stipulates and agrees that the terms of this Agreement are not confidential and may be provided to third parties. The Parties agree that the attached press release (**Exhibit B**) is an acceptable characterization of this Agreement and further agree to make good faith efforts to conform any public statements concerning this matter to the spirit and intent of this release.

6.  Binding Effect. This Agreement shall inure to the benefit of and shall be binding upon the undersigned Parties and their respective agents, representatives, affiliates, and successors.

7.  Governing Law. THIS AGREEMENT IS MADE AND ENTERED INTO IN THE STATE OF SOUTH CAROLINA AND SHALL IN ALL RESPECTS BE INTERPRETED, ENFORCED, AND GOVERNED UNDER THE LAWS OF THE STATE OF SOUTH CAROLINA. The language in all parts of this Agreement shall be in all cases construed as a whole according to its meaning and not strictly for or against any Party.

8.  Voluntary Agreement. Each of the Parties acknowledges that this Agreement has been executed freely and voluntarily, without compulsion and with full knowledge of its legal significance and consequences.

9.  Authority. Each of the undersigned warrants and covenants that he or she has the authority and authorization to execute this Agreement on behalf of their respective Party and that each Party has taken any and all necessary steps to ratify, approve, and consent to the terms and conditions contained herein.

10. Counterparts. This Agreement may be executed in counterparts or with detachable signature pages and shall constitute one agreement, binding upon all the Parties as if all the Parties signed the same document.

11. <u>Headings</u>.  The headings used in this Agreement are intended solely for the convenience of reference and should not in any manner amplify, limit, modify or otherwise be used in the interpretation of any of the provisions of the Agreement.

12. <u>Entire Agreement</u>.  This Agreement embodies, merges, and integrates all prior and current agreements and understandings of the Parties and may not be clarified, modified, changed, or amended except in writing signed by each signatory hereto or their other authorized representatives.

13. <u>Survival</u>.  All representations, covenants, and warranties contained herein shall survive the execution and delivery of this Agreement and the execution and delivery of any other document or instrument referred to herein.

14. <u>Severability</u>.  Should any term or condition of this Agreement become invalid as a matter of law, then the remainder of this Agreement shall remain in full force and effect.

15. <u>Counsel</u>.  The Parties, together with their respective legal counsel, actively and equally participated in the negotiation and review of this Agreement, with the Parties having the opportunity to make changes. Therefore, in the event of any ambiguity in this Agreement, such ambiguity shall not be presumptively construed in favor of or against either Party solely because that Party or its legal representation drafted the provision.

16. <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, all of which constitute a single agreement. The execution and delivery of such counterpart by any Party shall have the same force and effect as if that person had executed all other counterparts. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic format (i.e., "pdf" or "tif") shall be effective as delivery of a manually executed counterpart of this Agreement.

17. <u>Court Approval</u>.  The parties understand and agree that this Agreement and its implementation is expressly subject to the approval of the Court by way of entry of a final order consistent with the Proposed Consent Order of Dismissal with Prejudice consistent with 33 U.S.C. § 1365.

WHEREUPON, having fully set forth their agreement, the Parties have set their hands and seals on the date first stated above.

[SIGNATURE PAGES FOLLOW]

Frontier Logistics, L.P.                    Charleston Waterkeeper

_____                   _____
By: George Cook                             By: Andrew Wunderley
Its: Chief Executive Officer                Its: Executive Director

South Carolina Coastal Conservation League


_____
By: Laura Cantral
Its: Executive Director

Frontier Logistics, L.P.                     Charleston Waterkeeper

_____           _____
By: George Cook                                By: Andrew Wunderley
Its: Chief Executive Officer                Its: Executive Director


South Carolina Coastal Conservation League

_____
By: Laura Cantral
Its: Executive Director

8

**SETTLEMENT AGREEMENT**
**EXHIBIT A**

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | |
|---|---|
| CHARLESTON WATERKEEPER, ) <br> SOUTH CAROLINA COASTAL ) <br> CONSERVATION LEAGUE, ) <br>   ) <br>   Plaintiffs, ) <br>   ) <br>   v. ) <br>   ) <br> FRONTIER LOGISTICS, L.P., ) <br>   ) <br>   Defendant. ) <br>   ) | C/A No. 2:20-cv-01089-DCN |

### JOINT MOTION FOR ENTRY OF A CONSENT ORDER
### DISMISSING THIS ACTION WITH PREJUDICE

Pursuant to Fed. R. Civ. P. 41(a)(2) and Local Rule 7.01, Plaintiffs Charleston Waterkeeper and South Carolina Coastal Conservation League ("Plaintiffs"), and Defendant Frontier Logistics, L.P. ("Defendant"), respectfully move this Court for dismissal with prejudice of this case. The parties are pleased to report that they have been engaged in settlement discussions over the past month in an effort to resolve the citizen suit litigation initiated by Plaintiffs under the Federal Clean Water and Resource Conservation and Recovery Acts, respectively, regarding Defendant's operations of its now-closed facility at the Union Pier Terminal in Charleston. Through hard work, compromise, and arms-length negotiation, the parties have reached a settlement agreement that fully resolves the issues and claims advanced in this litigation and is fair, adequate, reasonable, not against the public interest, not illegal, and not the product of collusion. A copy of the fully-executed settlement agreement is attached hereto as Exhibit A ("Settlement Agreement").

Accordingly, the parties agree to the dismissal of this action with prejudice, subject to the Court retaining jurisdiction to enforce the terms and conditions of the Settlement Agreement, as

1

**SETTLEMENT AGREEMENT**
**EXHIBIT A**

well as the provisions of the Confidentiality Order (dkt.#18). As the issues between the parties have been resolved, the Plaintiffs and Defendant hereby jointly request that the Court dismiss this action with prejudice[1] and grant such other relief as the Court deems just and proper.

[SIGNATURE PAGE FOLLOWS]

---

[1] Pursuant to 33 U.S.C. § 1365(c)(3), the parties will promptly cause copies of the proposed Consent Order of Dismissal with Prejudice and the settlement agreement and Confidentiality Order referenced therein to be served upon the Attorney General of the United States and the acting Administrator of the United States Environmental Protection Agency. The parties request that the Court not enter the proposed consent order until 45 days after the receipt of a copy of the proposed order by the Attorney General and the Administrator. *Id.* The parties will promptly file proof of service on the docket after such documentation is obtained, and will also contact the Court after the expiration of the notice period regarding their request for entry of the proposed Consent Order of Dismissal with Prejudice.

**SETTLEMENT AGREEMENT**
**EXHIBIT A**

Respectfully submitted,

*s/Catherine M. Wannamaker*
Catherine M. Wannamaker, Fed. Bar No. 12577
**Southern Environmental Law Center**
525 East Bay Street, Suite 200
Charleston, South Carolina 20403
cwannamaker@selcsc.org
(843) 720-5270

Jefferson Leath, Fed. Bar No. 2627
**Jefferson Leath, Esq., LLC**
231 Calhoun Street
Charleston, South Carolina 29401
jeff@leathesq.com
Telephone: 843/607-4038

*Attorneys for Plaintiffs*
*Charleston Waterkeeper and*
*South Carolina Coastal Conservation League*

*s/Chad N. Johnston*
Randolph R. Lowell, Fed. Bar No. 9203
Chad N. Johnston, Fed. Bar No. 10813
J. Joseph Owens, Fed. Bar No. 12575
**WILLOUGHBY & HOEFER, P.A.**
133 River Landing Drive, Suite 200
Charleston, South Carolina 29492
rlowell@willoughbyhoefer.com
cjohnston@willoughbyhoefer.com
jowens@willoughbyhoefer.com
(843) 619-4426

*Attorneys for Frontier Logistics, L.P.*

March __, 2021
Charleston, South Carolina

3

<u>**SETTLEMENT AGREEMENT**</u>
<u>**EXHIBIT A**</u>

# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| CHARLESTON WATERKEEPER, <br> SOUTH CAROLINA COASTAL <br> CONSERVATION LEAGUE, <br><br> Plaintiffs, <br><br> v. <br><br> FRONTIER LOGISTICS, L.P., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | C/A No. 2:20-cv-01089-DCN |

## CONSENT ORDER OF DISMISSAL WITH PREJUDICE

This matter is before the Court on the joint motion of the parties for dismissal of the pending action pursuant to Fed. R. Civ. P. 41(a)(2) and Local Rule 7.01. Plaintiffs Charleston Waterkeeper and South Carolina Coastal Conservation League ("Plaintiffs"), and Defendant Frontier Logistics, L.P. ("Defendant"), report that they have been engaged in settlement discussions over the past month in an effort to resolve the citizen suit litigation initiated by Plaintiffs under the under the Federal Clean Water and Resource Conservation and Recovery Acts, respectively, regarding Defendant's operations of its now-closed facility at the Union Pier Terminal in Charleston.

As reflected in the settlement agreement attached hereto, the terms of which are incorporated herein, those discussions have been successful and the parties have reached a settlement agreement that fully resolves the issues and claims advanced in this litigation. Upon review of the settlement agreement, the allegations in the complaint, and considering that the Court denied Frontier's motion for judgment on the pleadings, the substantial discovery that has taken place in this matter, the significant experience of Plaintiffs' and Defendant's counsel with

4

environmental litigation such as this, and the want of any indication that settlement negotiations were anything other than arms-length, the Court concludes that the agreement is fair, adequate, reasonable, not against the public interest, not illegal, and not the product of collusion. As part of the settlement, the parties have also asked this Court to retain jurisdiction to enforce the terms and conditions of the Settlement Agreement, as well as the provisions of the previously-entered Confidentiality Order (dkt.#18).

Consistent with 33 U.S.C. § 1365(c)(3), having considered the motion and the attached settlement agreement, and for good cause shown,

**IT IS HEREBY ORDERED**, that all the parties consent to dismissal and there is no case or controversy remaining for the Court to adjudicate, and that this action is concluded and **DISMISSED WITH PREJUDICE**.

**AND, BY AGREEMENT OF THE PARTIES**, the Court retains jurisdiction to enforce the settlement agreement referred to hereinabove, as well as the Court's Confidentiality Order (dkt.#18).

**AND IT IS SO ORDERED.**

_____
Honorable David C. Norton
United States District Judge

Dated: _____
Charleston, South Carolina

5

**SETTLEMENT AGREEMENT**
**EXHIBIT B**

**PRESS RELEASE**

[DATE], 2021

*Charleston Waterkeeper and South Carolina Coastal Conservation League v. Frontier Logistics, L.P.*, C/A No. 2:20-cv-01089-DCN

The Charleston Waterkeeper, the South Carolina Coastal Conservation League, and Frontier Logistics, L.P., are pleased to announce today that, pending final approval of the Court, they have successfully concluded a recent concerted effort to reach a settlement to end the lawsuit pending in Federal District Court in Charleston. That lawsuit related to allegations regarding Frontier's operations at Union Pier Terminal on the peninsula involving the release of plastic pellets into the Charleston Harbor.

Frontier's operations recently and permanently moved from Union Pier Terminal to a new facility in North Charleston. Notwithstanding, the negotiations between the parties sought to focus on a shared effort and vision to fund and implement one or more environmental projects in the Charleston region that would both further the goals of the litigation and substantially benefit the Charleston Harbor environment.

The settlement agreement includes a number of voluntary commitments by Frontier, including a substantial monetary donation to fund projects identified by the Waterkeeper and the League, as well as measures implemented at its new facility to confirm Frontier's safe and efficient operation in the Charleston region for years to come.

The Waterkeeper, the League, and Frontier agree that this settlement is a fair, reasonable, and beneficial resolution of the claims advanced in the lawsuit, and that the agreement is no admission of fault, wrongdoing, or liability. The parties all agree that environmental stewardship in the Charleston region generally, and the Charleston Harbor specifically, is an important priority that is furthered by this settlement and the beneficial environmental projects that will be funded

<b><u>SETTLEMENT AGREEMENT</u></b><br><b><u>EXHIBIT B</u></b>

by Frontier. In sum, this agreement and the forward-looking measures it contains are in the best interests of the citizens, the economy, and the environment of South Carolina.

###